# CHARLESTON.

ALICE RITTER, A*dmrx.* v. H. W. & I. R. HICKS

(No. 5747)

Submitted October 20, 1926.   Decided November 9, 1926.

1.  AUTOMOBILES—*Failure to Anticipate Omission of Ordinary Care by Others Does Not Render Pedestrian Crossing Street Negligent as Matter of Law.*

    The rights of pedestrians and vehicular traffic, in the use of streets and highways, are generally "mutual, equal and co-ordinate". A pedestrian should use ordinary care for his own safety when crossing a street or highway: however, he has the right to assume that others will use a like care to avoid injuring him. Failure to anticipate omission of such care does not render the pedestrian negligent as a matter of law. In case of injury to a pedestrian by a vehicle, what constitutes ordinary care is generally a question of fact for the jury. *Deputy* v. *Kimmell,* 73 W. Va. 595. (p. 545.)

2. SAME—*Pedestrian Need Not Look Certain Number of Times Nor Await Passing of Vehicle, Unless Proximity or Speed Renders Crossing Hazardous, and Care is Generally for Jury.*

The law does not impose upon the pedestrian the burden of looking any certain number of times before crossing a street or highway; neither is he bound to await the passing of an approaching vehicle unless its proximity or apparent speed renders crossing hazardous. If the way appears open he may proceed, and his care in that respect is generally a question of fact for the jury. *Deputy* v. *Kimmell, supra.* (p. 546.)

3. SAME—*Owner of Automobile Purchased for Demonstration and Sale Held Not Liable Under "Family Purpose" Doctrine Nor Under Doctrine of Respondeat Superior for Son's Negligent Driving After Business Hours for Own Pleasure.*

The owner of an automobile purchased for demonstration and sale, and not for family use, is not responsible under the "family purposes" doctrine for a tort committed by his son while driving the automobile. Neither is he liable under the doctrine of *respondeat superior*, because the son was employed to sell cars owned by the father, when the car was being used after business hours, not in the course of the employment, but for the son's own pleasure, even though the use was with the tacit consent of the owner. (p. 548.)

Error to Circuit Court, Mercer County.

Action by Alice Ritter, administratrix of the estate of James E. Ritter, deceased, against H. W. Hicks and I. R. Hicks. Judgment for plaintiff, and defendants bring error.

*Reversed and dismissed as to H. W. Hicks, affirmed as to I. R. Hicks.*

*Harold A. Ritz, George Richardson, Jr.,* and *Campbell & McClintic,* for plaintiffs in error.

*Sanders, Crockett, Fox & Sanders,* for defendant in error.

HATCHER, JUDGE:

This writ of error involves the validity of a judgment of $9250.00, recovered in the circuit court of Mercer County against the defendants H. W. and I. R. Hicks by the plaintiff, as damages for the death of her husband, James E. Ritter.

At about 8 P. M. of December 23, 1924, Mr. Ritter was struck by an automobile on a street in the city of Bluefield. The injuries received then caused his death on the following day. The automobile was being driven by I. R. Hicks, who is the son of H. W. Hicks. H. W. lives at Pocahontas, Virginia, where he deals in automobiles. He is also the sole proprietor of an automobile agency in Keystone, West Virginia. I. R. is the manager, and in full control of the Keystone business. It was his habit to use the cars under his charge for his own pleasure. This practice was known to, and seemingly approved by his father. On the night of the accident I. R. was driving, for his own pleasure, a heavy Lincoln sedan, kept at the Keystone agency for demonstration and sale.

The testimony of plaintiff is that she and her husband started to cross Bland Street at a point about forty feet from its intersection with Federal Street; that it was dark and rainy at the time; that they saw a car coming south on Bland Street and waited until it passed; that they then looked for other cars and saw the defendant's car coming north on Bland Street, about seventy-five yards away and "with real bright lights". The mental processes of the two are described in her statement "because it was so far away we didn't think of it hitting us. We didn't think of speeding and thought we had plenty of time to cross." They then attempted to do so. They did not look again in the direction of the sedan and did not realize its proximity until it was upon them. At the time of the accident, they were near the center of the street, which is 33.7 feet wide at that place. Several witnesses testified that the sedan gave no signal of its approach; that its speed did not slacken; that it was making from twenty-five to thirty-five miles an hour when it struck Mr. Ritter; and that it knocked or dragged his body forty or fifty feet.

I. R. Hicks was accompanied by a young man named Baylor. I. R. estimated that the sedan had slowed down to seven or eight miles an hour at the intersection of Bland and Federal streets: Baylor fixed its speed at the intersection at five to six miles an hour. Neither gave his opinion as to the speed of the sedan at the place of the accident. Baylor testified that they

kept picking up speed after they entered Bland Street. I. R. stated that his lights were dimmed, and that he could see only about ten feet in front of the car; that there were no street lights at that place on Bland Street, and what little light the street had came from the store lights; that he did not see Mr. and Mrs. Ritter until his car was within three or four feet of them, when he threw on his brakes, slid his wheels and came to a stop. He did not say when he switched from the bright to the dimmed lights. No witness for defendants testified as to how far the body of Mr. Ritter was knocked or dragged by the sedan. It was shown, however, that the plaintiff was crossing the street to a fruit store which was fifteen feet from a gasoline station in front of which the sedan came to a stop.

For I. R. Hicks it is contended that Mr. Ritter was guilty of contributory negligence as a matter of law, in failing to watch the sedan and use due care to avoid being struck after seeing it approaching.

Counsel for I. R. do not in terms deny that he was negligent. They attempt, however, to palliate his culpability on the theory that if his car struck the decedent in front of the fruit store and came to a stop in front of the gasoline station, just fifteen feet from the place of contact, the sedan could not have been running at the speed estimated by plaintiff's witnesses. This theory is predicated on evidence most favorable to defendants. The evidence favoring plaintiff, to which we must now give the preference, fixes the place where the decedent was struck in front of a fire hydrant. The hydrant is about forty feet from the gasoline station.

Upon the charge of contributory negligence, the court should review the circumstances surrounding the accident from the standpoint of the decedent. The mere fact that he suffered an injury may indicate mistaken inferences; but want of care does not necessarily accompany an erroneous decision. The law makes due allowance for "the influences which ordinarily govern human action." *Lent* v. *Ry. Co.* 120 N. Y. 467. The test is not, was his judgment at fault, but does his conduct indicate that he failed to use ordinary prudence under

the circumstances at the time, as he conceived them. Extraordinary care is not required in such case, and the conduct of the injured party is not to be measured by that of the highly cautious. *Meeks* v. *Ry. Co.*, 52 W. Va. 99.

A common thought running through the earlier opinions of this court on contributory negligence is that one is not required to anticipate heedlessness in another; that he has a right to presume that another will act with care; and that if one is injured as a result of that presumption, he is not guilty of contributory negligence. *Washington* v. *Ry. Co.*, 17 W. Va. 190 (213); *Riley* v. *Ry. Co.*, 27 W. Va. 145 (162); *Barker* v. *Ry. Co.*, 51 W. Va. 423; *Meeks* v. *Ry. Co.*, *supra* (103). That doctrine is peculiarly applicable to automobile accidents, and in the later case of *Deputy* v. *Kimmell*, 73 W. Va. 595, it was held: ''A person lawfully in a public highway may rely upon the exercise of reasonable care by drivers of vehicles to avoid injury''. This right is upheld generally by the authorities. *Kessler* v. *Washburn*, 157 Ill. App. 532; *Cole Co.* v. *Ludordoff*, 61 Ind. App. 119; *Aiken* v. *Metcalf*, 90 Vt. 196; *Klokow* v. *Harbaugh*, 166 Wis. 262; *Moffatt* v. *Link* (Mo.) 229 S. W. 836; *Benoit* v. *Miller* (R. I.) 67 Atl. 87; *Johnson* v. *Johnson*, 85 Wash. 18; Huddy on Auto. 7th Ed. par. 577; Berry, Auto. 4th Ed. par. 378; Babbitt Motor Vehicles, 3rd Ed. pars. 1330, 1682.

*Deputy* v. *Kimmell* also holds that the rights of pedestrians and drivers of vehicles, in the use of streets, are ordinarily ''mutual, equal and coordinate''. *Core* v. *Wilhelm*, 124 Va. 150; *Stringer* v. *Frost*, 116 Ind. 477; *O'Dowd* v. *Newham*, 13 Ga. App. 220.

Applying those principles to the facts in this case, we must hold that Mr. Ritter had equal right to use the street at the place of the accident with I. R. Hicks; that Ritter failed to realize that the sedan was approaching at a speed which would render crossing palpably dangerous; that he assumed and had the right to assume that the sedan was being driven at a lawful rate of speed; that he had a right to assume that the close approach of the car would be signalled, if not by the horn, at least by the radiance from the lights; that he also

had the right to assume that since he had seen the sedan, its driver would see him upon a closer approach of the car and would then take due precaution to avoid running him down. Ritter's death was due to the confidence he placed, and had the right, under the law, to place in the driver of the car. *Misplaced confidence is not contributory negligence. Barker* v. *Ry. Co., supra* (427). In *Washington* v. *Ry. Co., supra,* a leading case on negligence in this State, it was declared that recovery would not be denied the plaintiff (on the ground of contributory negligence), unless his act was one that he should reasonably anticipate would result in his injury. Weighed by that rule, we would violate human experience were we to impute to decedent the expectation that his attempt to cross the street would result as it did. While there are many reckless drivers of automobiles, the overwhelming per cent of operators use such care that in progressing seventy-five yards along a street, they will discover and avoid one in their pathway. Crossing streets has not yet become a lethal sport with the odds against the pedestrian. "Failure to anticipate omissions of such care does not render him negligent." *Deputy* v. *Kimmell, supra;* Sherman & Redfield, Negligence, 6th Ed. par. 92, Huddy, *supra,* par. 577.

Counsel particularize the failure of the decedent to keep the approaching car under observation. *Deputy* v. *Kimmell, supra,* specifically holds that a pedestrian is not bound as a matter of law to be continuously observant of approaching automobiles. The law does not impose upon the pedestrian the burden of looking any certain number of times before crossing a street or highway, neither is he bound to await the passing of an approaching vehicle unless its proximity or apparent speed renders crossing hazardous. If the way appears open, he may proceed, and his care in that respect is generally a question of fact for the jury. *Deputy* v. *Kimmell, supra.* These rights are well upheld by that brilliant chancellor, Justice Cardoza, in *Knapp* v. *Barrett,* 216 N. Y. 226: "A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger (*Barker* v. *Savage,* 45 N. Y. 191). The law

does not say how often he must look, or precisely how far, or when or from where. · If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault.'' To hold otherwise would compel many a pedestrian to long remain ''Standing with reluctant feet where the sidewalk and the roadway meet'', as was paraphrased by Winslow, C. J. in *Klokow* v. *Harbaugh, supra.*

A case similar in all respects to this one, is that of *Thornton* v. *Cater,* 94 N. J. L. 435 (437), in which the court said: ''She saw the automobile approaching; she perceived that it was three hundred feet away as she stepped off the westerly curb; she knew that the roadway was a very narrow one; she had a right to assume that her passage across the street would be observed by the driver of the defendant's car; she knew that he could utilize the full width of the street to avoid running her down, for the evidence showed that there was no obstruction in the street to prevent such free use of it. by him. We do not think it can be said as a matter of law that a reasonably prudent person exercising due care for her own safety would not have acted as Mrs. Thornton did in the situation which was presented to her mind.''

Quite an array of decisions has been compiled by counsel in support of the contention that the decedent was negligent as a matter of law. Some of the citations, such as *West* v. *Transportation Co.,* 94 N. Y. Supp. 426 and *Roder* v. *Logendre* (La.) 84 So. 787, are obviously differentiated from this case by the facts. Others, such as *Palmer* v. *Tschudy* (Cal.) 218 Pac. 36 and *Prince* v. *Brewery,* 177 N. Y. Supp. 168, failed to apply the principles pronounced by this court in *Deputy* v. *Kimmell, supra,* and are consequently without force as persuasive authority.

We accordingly hold that whether the conduct of plaintiff's decedent was negligent is a matter of fact for the jury and not of law for the court. On this fact the jury was sufficiently instructed, despite the refusal of the trial court to give all the instructions tendered by defendants.

It is contended for H. W. Hicks that he is not responsible for the tort of I. R. Hicks either under the ''family purposes'' or the *respondeat superior* doctrine.

The facts proven fail to make H. W. liable under the ''family purposes'' doctrine, because it was not shown (a) that I. R. was a member of his family at the time of the accident, or (b) that the sedan was provided by H. W. for family use.

H. W. is not responsible under the doctrine of *respondeat superior* because I. R. was at the time of the accident not engaged in the business of his employer.

H. W. may have allowed I. R. to use his automobiles for pleasure because of their kinship: he may have permitted this use in order to keep the manager of his business more contented: but whatever his motive, it does not appear in the evidence.

This case is differentiated from *Jones* v. *Cook*, 90 W. Va. 710, because the sedan was not kept for a filial purpose; and from *Goff* v. *Dairy Co.*, 86 W. Va. 237, because there is no evidence tending to prove that the use of the sedan by I. R. was ''within the informal contract of employment.''

Counsel for plaintiff virtually admit that the facts as to the use of the car by I. R. do not present a clear case of liability by H. W. under either of the above legal principles. Their position, as expressed in their brief is: ''We find here a combination of relationships, which make the arguments and reasoning advanced in support of all the other doctrines applicable to this case.'' We are citing no authority which supports that position. The facts in a case at law may be compared to the fable of the bundle of sticks—all taken together may establish a liability, where no single fact would do so. But legal liability is ordinarily determined by a single principle of law. Whether a single principle, or a congeries of

principles, is sought to be applied, the facts proven must clearly bring the case within the control of each principle involved. If neither of two legal principles is applicable to a case, we fail to see how a combination of the two can become any more applicable.

Under the evidence, I. R. is simply the gratuitous bailee of the automobile. The authorities are in accordance that the owner of a car is not responsible in a case where his agent or employee uses the car when off duty, for his own pleasure, and not in the business of the employer. There is no material difference between this case, as to the liability of H. W., and the case of *Archie* v. *Hudson Essex Co.* (R. I.) 120 Atl. 162: "Liability of a company engaged in selling automobiles for negligent driving of its automobile by an officer and salesman, who had general permission to use it for its business or for his private purposes, can rest only on proof of agency at the time and place of accident; so, where he was simply taking his family home from a place not on his route to and from his business, and was then not contemplating any sale or anything connected with the company's business, it was not liable." From the northwest comes a case equally in point: "The doctrine ("family purposes") is a development of the rules applicable to the relation of master and servant and principal and agent, and is not to be extended to cases where an employer permits a favored employee to use, for his own pleasure, an automobile kept and ordinarily used in carrying on the employer's business. An employer is not liable for the negligence of his employee, who took his automobile to drive out to a park with his family on a holiday, and negligently ran down and injured a person at a street intersection, even though he had his employer's permission to take the automobile." *Mogle* v. *Scott Co.* (Minn.), 174 N. W. 832. Accord: Berry, *supra*, par. 1184; Huddy, *supra*, par. 787; and the many cases cited in annotation to *Fisher* v. *Fletcher*, 22 A. L. R. 1392 (1400).

The judgment, so far as it affects H. W. Hicks, will therefore be reversed, and the case against him will be dismissed. Under *Pence* v. *Bryant*, 73 W. Va. 126, the vacation of the

judgment as to H. W. Hicks, does not affect it as to I. R. Hicks, and as to the latter it is accordingly affirmed.

*Reversed and dismissed as to H. W. Hicks; affirmed as to I. R. Hicks.*